**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 15, 2013**

# In the Court of Appeals of Georgia

A13A0750. SERMONS et al. v. AGASARKISIAN et al.

BOGGS, Judge.

Veronica and Barry Sermons (collectively "the Sermons") appeal from the order of the superior court adopting the report of a special master and decreeing that they have no interest in an alleged alley running to the rear boundary of their property and that all interest in the disputed property is vested in Sarkis Agasarkisian and William Martin "pursuant to the deeds of record describing their individual interests in the disputed property.[1] The Sermons contend that the trial court erred by: (1)

---

[1] While this case was originally filed in the Supreme Court of Georgia, the Supreme Court transferred it to this court based upon its conclusion that appellants "do not claim more than an easement in the property and an easement is an interest in land less than fee simple title. . . . As easement cases do not fall within this Court's title to land jurisdiction, . . . this appeal is transferred to the Court of Appeals." The Supreme Court acknowledged that "Appellants filed this direct appeal seeking review of the trial court's order finding that easements they claimed for their mutual and

concluding that the alley was abandoned by nonuse; (2) relying upon an unauthenticated document not admitted into evidence; (3) failing to consider their objections to the special master's report; (4) failing to vest a portion of the abandoned alley into their title; and (5) entering a final order without resolving their trespass and nuisance claims. For the reasons explained below, we reverse the trial court's order based upon an error of law.

"[O]nce the trial court adopts the special master's findings and enters judgment, the court's decision is upheld by the appellate court unless clearly erroneous. Therefore, if there is any evidence supporting the judgment of the trial court, it will not be disturbed. But conclusions of law are reviewed de novo." (Citations and punctuation omitted.) *McGregor v. River Pond Farm*, 312 Ga. App. 652, 653 (1) (719 SE2d 546) (2011). So viewed, the record shows that the Sermons own property located at 816 Berkeley Avenue in Fulton County. William Martin owns property facing Forrest Street with a rear boundary that adjoins the rear property line of the Sermons' property. A lot owned by John Green adjoins both the Sermons' property and that of Agsarkisian and faces Howell Mill Road. Agasarkisian's property is

common use had been abandoned, and its determination that *title* to the subject property was vested in appellees." (Emphasis supplied.)

2

situated on the corner of Forrest Street and Howell Mill Road. The deeds to all of the properties reference an alley running between the properties of Martin and Agasarkisian, along the rear of Green's property, and to the rear of the Sermons' property.

After a load of dirt was placed in the middle of the alley in 2008, the Sermons and other adjoining property owners, who are not parties to this appeal, filed a complaint against Martin and Agasarkisian seeking damages for trespass, nuisance, and a judgment declaring the existence of the alley for the mutual use of all adjoining landowners. Martin and Agasarkisian denied liability and counterclaimed for a judgment declaring the disputed alley does not exist and has been abandoned. They also asserted that Martin was the owner in fee of the portion of the easement used by him as a driveway and had acquired an exclusive easement by prescription in the remaining portion of the disputed alley. Following its grant of an interlocutory injunction preventing interference with the plaintiffs' use of the alley by foot or vehicle, the trial court appointed a special master "to conduct hearings and make such findings of fact and conclusions of law as may be necessary."

In a hearing held by the special master in December 2009, Barry Sermons testified that he has lived at 816 Berkeley Avenue since 1991, and that he purchased

the property in 1995. He testified that from the time he first lived at 816 Berkeley Avenue, pedestrians used an alley running from the back of his property to Forrest Street to travel between Berkeley Avenue and Forrest Street, as well as to walk their dogs. He testified that a survey showing the alley factored into his decision to purchase 816 Berkeley Avenue. He testified that he currently uses the alley to access a garage on the rear of his property, that he has always used the alley to walk his dog, and that he started using it "for vehicular traffic" beginning in the year 2000. He testified that he and an adjoining property owner "put just under $3,000 in [gravel] and dirt and topsoil in to keep it passable." He also installed a silt fence on one side of the alley and railroad ties on the other to prevent erosion.

He testified that in the year 2000, he obtained a building permit to construct a driveway on the rear portion of his property, that Martin and Agasarkisian sought a temporary restraining order to prevent him from using the alley to access the driveway, but they later "dropped their case." Since 2000, the Sermons have continuously used the alley. In July 2008, however, Agasarkisian dumped a load of dirt in the middle of the alley to block the Sermons' use of it. After the trial court granted an interlocutory injunction, Sermons moved the dirt out of the way with a skidloader and resumed his use of the alley.

4

Sermons initially testified that he obtained a building permit in 2000 to put up a fence on the rear of his property and construct a driveway, but during cross-examination, he was shown a building permit for the driveway issued on December 12, 2002. Sermons admitted that after he obtained the permit, he placed gravel in the disputed alley as well as on his own property. In 2006, he obtained a second building permit to build a two-story addition to his house, including a two-car garage, and the work began in 2007. Before adding on to their home, the Sermons had access to the rear of their property from a driveway off of Berkeley Avenue.

Green, who owns property facing Howell Mill Road and adjoining both the Sermons' and Agasarkisian's property, testified that he has lived in the area around the alleged alley since 1970 and has knowledge of the area dating back to the 1940's. He testified that he has continuously used the alley since 1967, when his mother moved into the neighborhood.[2]

Martin testified that he purchased his property in 1966 or 1967, that he never saw an alleyway on his property, and that he installed a driveway on his property and in a portion of the disputed alley to gain access to the rear of his commercial building.

---

[2] Based upon inconsistencies in portions of Green's testimony, the special master found "Green's testimony to be contradictory and unsupported by the Special Master's inspection of the disputed property."

5

Martin testified that before he installed the driveway, the area was not developed and "was just a steep hill."

Martin's son testified that after his father purchased the property in 1967, he helped his father build a commercial building on the property to house his electrical motor repair business. During construction, a gravel driveway going to the rear of the building was constructed in the disputed alley. He testified that the portion of the disputed alley beyond the constructed driveway for the commercial building "was an absolute ravine . . . overgrown with kudzu." This ravine ran from the rear portion of Agasarkisian and Martin's properties and was "all overgrown, trees falling in it, all that kind of stuff." Between 1967 and 2002, Martin's son never saw the disputed alley "in any condition to be used for egress and ingress" or anyone "trying to grade a road in there or drive a vehicle." He never saw anyone who previously owned the Sermons' property attempt to develop the disputed alley to gain access to Forrest Street. Finally, no one ever attempted to prevent his father from using the driveway he constructed in the area of the disputed alley.

Agasarkisian testified that when he purchased his property in 1988, there were many trees and a steep hill in the end of the alleged alley between his property and Martin's property, rendering it impossible for a vehicle to pass through to the

Sermons' property. In 2002, after Sermons had been cutting down trees for years, Sermons brought in dirt to fill the area. He testified that he knew John Green and never saw him use the alley from the time he purchased his property in 1988 through the time of the hearing.

Following the hearing, the special master correctly concluded in her written report that the following facts were undisputed: that the alley was created by a 1924 alley agreement between adjoining property owners; the alley agreement references a 1916 plat depicting the two properties; that a recorded 1937 Berkeley Park Subdivision plat depicts the alley; that the Sermons' deed references the Berkeley Park Subdivision plat; that Martin's deed states that his property runs up to, but not into, the alley; and that Agasarkisian's deed also states that it runs up to, but not into, the alley. At the conclusion of its report, the special master found "that if the alleyway . . . ever existed it has long since been abandoned because of an extensive period of nonuse, the fact that there is no evidence that an alleyway was ever constructed by the City of Atlanta; and, the Special Master is not persuaded . . . that the property was ever used as an alleyway." The trial court concluded, based upon the special master's report, that the alley "has long been abandoned because of an extensive period of nonuse (if it ever existed at all)."

1. On appeal, the Sermons contend that the trial court committed a legal error by adopting the special master's conclusion that the express easement (the alley) had been abandoned by nonuse. We agree.

"The law does not favor the extinguishment of easements, and an easement acquired by grant is not extinguished merely by nonuse; there must be clear, unequivocal, and decisive evidence of an intent to abandon the easement." *Whipple v. Hatcher*, 283 Ga. 309, 310 (658 SE2d 585) (2008). See also *Sadler v. First Natl. Bank of Baldwin County*, 267 Ga. 122, 123 (2) (475 SE2d 643) (1996). Stated otherwise,

> Where a right of way or other easement is acquired by grant or deed, no duty is thereby cast upon the owner of the dominant estate thus created to make use thereof or enjoy the same as a condition to the right to retain his interest therein, and the mere non-user of such an easement for a period however long will not amount to an abandonment. The mere fact that one does not immediately begin to exercise his right of use under an easement, or that he delays doing so for a number of years, would not occasion a loss of the easement. His right being complete, he could not be deprived of it except by express abandonment, or by such conduct as would be tantamount to the same.

*Owens Hardware Co v. Walters*, 210 Ga. 321, 321-322 (2) (80 SE2d 285) (1954). Moreover, "it is not essential to the acquisition of such easement by the purchasers

8

that there was a dedication of the street to public use and acceptance thereof by the public, evidenced by its use." Id. at 321 (1). "When a deed incorporates a recorded plat by reference as the legal description, such incorporated plat has the effect as if it were written out in the deed." *Reidling v. Holcomb*, 225 Ga. App. 229, 231 (1) (483 SE2d 624) (1997). And "[w]here a developer sells lots according to a recorded plat, the grantees acquire an easement in any areas set apart for their use, and that easement is an irrevocable property right," *Hampton Ridge Homeowners Assoc. v. Marett Properties*, 265 Ga. 655, 656 (1) (460 SE2d 790) (1995), that will automatically pass to successors in interest. *Ford v. Harris*, 95 Ga. 97, 101 (22 SE 144) (1894); *Church of the Nativity v. Whitener*, 249 Ga. App. 45, 47-48 (2) (b) (547 SE2d 587) (2001).

In this case, there is no evidence showing any express intent by the Sermons to waive or abandon their express easement in the alley following their purchase of the property in 1995. To the contrary, it is undisputed that the existence of the alley factored into the Sermons' decision to purchase the property and that they spent money improving the alley in 2002. While there appears to be some conflict in the Supreme Court of Georgia authority on whether an express easement may be

9

abandoned by non-use for a period of 20 years,[3] we need not address this issue because the Sermons did not own the property more than 20 years before they undisputedly took action in 2002 to maintain a portion of the alley and in 2008 to actively use the alley for vehicle ingress and egress. See *Gilbert v. Reynolds*, 233 Ga. 488, 493-494 (212 SE2d 332) (1974) (no abandonment of easement where defendant

---

[3] See OCGA § 44-9-6 (An easement may be lost by abandonment or forfeited by nonuse if the abandonment continues for a term sufficient to raise the presumption of release or abandonment.”); *Boling v. Golden Arch Realty Corp.*, 242 Ga. 3 (247 SE2d 744) (1978) (“[n]o presumption of abandonment arises from mere nonuse for a time of less than twenty-years [sic], as a matter of law”); *Gilbert v. Reynolds*, 233 Ga. 488, 493 (212 SE2d 332) (1975) (“current of authority seems to be that mere non-user for twenty years affords a presumption, *though not a conclusive one*, of extinguishment, even in cases where no other circumstances indicating an intention to abandon appear[]”) (Emphasis in original.); *Harris v. Powell*, 177 Ga. 15, 19 (169 SE 355) (1933) (“An easement created by deed is not forfeited by mere nonuser or abandonment, when the nonuser or abandonment has not continued for a term sufficient to raise the presumption of release or abandonment”); *Ford v. Harris*, 95 Ga. 97, 101 (22 SE 144) (1894) (stating in dicta that right to express easement might “become stale by long lapse of time, or by non-user under circumstances manifesting that the parties at interest had no intention ever to claim or use the right”). Compare *Sadler*, supra, 267 Ga. at 123 (2) (1996) (“Where an easement of way has been acquired by grant, the doctrine of extinction by nonuser does not apply; and mere nonuser without further evidence of an intent to abandon such easement will not constitute an abandonment.”); *Owens Hardware*, supra, 210 Ga. at 321-322 (2) (1954) (“The mere nonuser of an easement created by deed, for a period however long, will not amount to an abandonment.”); *Westbrook v. Comer*, 197 Ga. 433, 442 (29 SE2d 574) (1944) (same); *Tietjen v. Meldrim*, 169 Ga. 678, 695 (151 SE 349) (1930) (same; citing 19 C. J. 942 (151) (2)).

owned his property only 13 years; express easement dated back to 1880 and easement recognized in chain of title of both plaintiff and defendant).

2. Based upon our holding in Division 1, the Sermons' additional enumerations of error are rendered moot and their claims for trespass and nuisance remain pending below.

*Judgment reversed. Doyle, P. J., and McFadden, J., concur.*