**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 7, 2014**

# In the Court of Appeals of Georgia

A13A2404. DONALD AZAR, INC. v. MUCHE et al.          DO-121

DOYLE, Presiding Judge.

Donald Azar, Inc. ("Azar")[1] appeals from a superior court order adopting a special master's report in Azar's suit against Tefera Muche, Ayanaw Muche, and USA Parking, Inc. (collectively "USA Parking"), seeking to enjoin obstructions to an alleged private way.[2] Finding no reversible error, we affirm.

---

[1] Donald Azar, Inc., is the named party by virtue of being the owner of property relevant to this appeal. For purposes of this opinion, the term "Azar" is used to refer to the corporate entity and the man of the same name, as appropriate in the context.

[2] The appeal was originally filed in the Supreme Court of Georgia, based on that Court's exclusive appellate jurisdiction in equity cases and in disputes over title to land. The Supreme Court transferred the case to this Court, stating that the case did not fit within the Court's definition of "title to land" cases as set out in *Graham v. Tallent*, 235 Ga. 47 (218 SE2d 799) (1975).

Concurrent findings by a trial court and special master are entitled to great deference on appeal. Findings of fact will not be reversed unless they are clearly erroneous, and as long as there is any evidence in the record to support a particular finding, it will not be disturbed. By contrast, conclusions of law by a trial court and special master are subject to de novo review on appeal.[3]

So viewed, the record shows that since 1959, Azar has owned a certain lot of real property, now vacant, east of Turner Field and bounded along a boarder by a former City of Atlanta public alley, Telford Alley, running north-south. Azar's lot is located along the eastern side of the city block. Between 1991 and 1996, USA Parking acquired all of the other lots in the block, including those along the eastern and western borders of the alley.

Since 1991, USA Parking used its property to operate surface parking for hire during sporting events. As part of its parking operations, USA Parking made certain improvements to its property, including installing a fence within Telford Alley, which

---

[3] (Footnote omitted.) *Second Refuge Church of Our Lord Jesus Christ, Inc. v. Lollar*, 282 Ga. 721, 724 (2) (653 SE2d 462) (2007). See generally *Washington v. Brown*, 290 Ga. 477, 478 (722 SE2d 65) (2012) ("In an action to quiet title brought under OCGA § 23-3-60 et seq., the findings of the Special Master and adopted by the trial court will be upheld unless clearly erroneous. The trial court's judgment will not be disturbed on appeal if there is any evidence to support it.") (citation and punctuation omitted).

was not open or passable when USA Parking acquired its property in 1991. The alley did not have a curb cut, and it had been overgrown and unused since the 1970s. By 1997, USA Parking had acquired all of the lots abutting the alley, including property on both sides of the alley, except for Azar's lot.

In 1998, USA Parking applied to the City of Atlanta to re-zone its parcels from residential to commercial. Azar did not object to the re-zoning; instead, he signed the re-zoning application, authorizing Muche to act as his agent in pursuit of the application, and attended the public hearing to show support for the re-zoning.

In 1999, the Atlanta City Council adopted an ordinance re-zoning a portion of USA Parking's property and a portion of Azar's property. The ordinance incorporated a concept plan illustrating the alley as closed and fenced off by a wooden fence along with landscaping buffer. In accordance with the zoning plan, USA Parking constructed the fence, which separated Azar's lot from the alley. Azar did not object to the fence, nor did he object to other improvements made by USA Parking within the closed alley, including cross ties, parking spaces, and utility lighting.

In 2001, Azar filed a suit in probate court seeking access to the alley so that he could drive cars across it to operate a parking service on the commercial portion of his property. He later dismissed this suit, and in 2006, Azar filed the instant suit, a

petition in superior court to enjoin obstruction of a private way and for damages. USA Parking answered and filed a counterclaim, seeking a judgment declaring that USA Parking is the owner of the alley abutting its property, and that Azar did not have an easement in the alley. The superior court referred the case to a special master, who held an evidentiary hearing and prepared a proposed order in favor of USA Parking on the ground that Azar had abandoned any interest he had in the alley. Specifically, the special master concluded that USA Parking had title to the alley abutting its property, "insofar as each or any have an interest," and subject to certain encumbrances of record and "any claim of right by any claimant not a party to [t]his lawsuit for issues not before the Special Master." The superior court adopted the special master's report and proposed order, and Azar filed this appeal.

1. Azar makes several arguments, but his appeal in essence asserts that the special master erred by concluding that he had abandoned any interest he had in the alley. For example, Azar argues that the special master applied an incorrect time period of nonuse to establish a presumption of abandonment, but this ignores the legal and evidentiary basis for the special master's conclusions. The parties, special master, and trial court all treated the alley as abandoned by the City of Atlanta, and

4

there is nothing in the record to dispute that finding.[4] Indeed, one witness testified that the alley had been unused and overgrown, without any curb cut to provide access, since the 1970s. When a city abandons an alley, "the property revert[s] to the adjoining lots, with each lot expanding out to the centerline of the portion of the [a]lley abutting it."[5] Thus, at a minimum, when the alley became closed, USA Parking's lots adjoining either side of the alley expanded to the centerline of the abutting portion of the alley. Accordingly, the special master did not err by so concluding.[6]

---

[4] We note that the City was not a party to this litigation, and the special master's report explicitly disclaims any resolution to issues not before it.

[5] *Cernonok v. Kane*, 280 Ga. 272, 272 & n.1 (627 SE2d 14) (2006), citing *Bayard v. Hargrove*, 45 Ga. 342, 351 (1872).

[6] We note that *Cernonok* addressed claims by adjacent property owners under color of title pursuant to deeds purporting to establish title in a disputed alley. In light of this, Azar argues that *Cernonok* does not apply, relying on language in the Supreme Court's order transferring the case to this Court. But that reference was in the Court's jurisdictional analysis, in which it explained that USA Parking "never contended that they actually held legal title to the alley, nor did they seek to recover possession of the alley from [Azar]." This distinction is relevant to the jurisdictional analysis, because the Supreme Court's exclusive appellate jurisdiction extends to "actions at law, such as ejectment and statutory substitutes, in which the plaintiff asserts a *presently enforceable legal title against the possession of the defendant for the purpose of recovering the land.*" (Emphasis supplied.) *Graham*, 235 Ga. at 49. As the Supreme Court pointed out, USA Parking did not assert present legal title to the alley to recover the land from Azar's allegedly wrongful possession, and thus

5

Azar nevertheless argues that he was granted an implied easement to access the alley, based upon a reference to the alley in his deed. As stated in Pindar's real estate hornbook, "[a] deed describing a tract as bounded by a street or alley will by operation of law confer upon the grantee a private easement for the use of such street or alley . . . ."[7] But

> [a]n easement may be lost by abandonment or forfeited by nonuse if the abandonment or nonuse continues for a term sufficient to raise the presumption of release or abandonment. No presumption of abandonment arises from mere nonuse for a time of less than 20 years, as a matter of law. Although where an easement has been acquired by grant, a mere nonuse, *without further evidence of an intent to abandon it*, will not constitute an abandonment, *intent to abandon can be established with evidence of a clear, unequivocal and decisive character*. The issue is one for the [factfinder] to decide.[8]

jurisdiction was proper in this Court. Nevertheless, USA Parking's counterclaim did seek a declaratory judgment establishing title in itself based on its ownership of property along both sides of the abandoned alley. Thus, the Supreme Court's jurisdictional rationale does not render inapposite the rule of law in *Cernonok.*

[7] 1 Pindar's Ga. Real Estate Law & Procedure § 8:14 (7th ed.).

[8] (Citations and punctuation omitted; emphasis supplied.) *Duffy St. S.R.O. v. Mobley*, 266 Ga. 849 (1) (471 SE2d 507) (1996).

Here, there was evidence that the alley was unused since the 1970s before USA Parking first improved areas in the alley and blocked its use in 1991. There was further evidence that Azar consented to USA Parking's improvements in the alley and supported a re-zoning plan that included fencing and other encroachments in the alley. Finally, there was evidence that Azar did not voice any objection to USA Parking's use or improvements in the alley until his 2001 suit in probate court. Under these circumstances, the special master was authorized to find that Azar had abandoned his interest in the closed alley.[9]

2. Azar also contends that he was granted an oral license to use the alley in exchange for his support of the re-zoning. But USA Parking disputed that any oral license was granted, and this evidentiary conflict was for the special master to resolve.[10] Further, even if an oral license was granted, "[a] parol license to use another's land is revocable at any time if its revocation does no harm to the person to whom it has been granted. A parol license is not revocable when the licensee has

[9] See id. at 850-851 (1) (finding sufficient evidence to support a finding of abandonment even where evidence was "sharply conflicted").

[10] See *Meinhardt v. Christianson*, 314 Ga. App. 705, 710 (2) (b) (725 SE2d 828) (2012) ("Because there was some evidence to show that [the defendant] never agreed to a parol license to use the way, the trial court's order must be affirmed").

acted pursuant thereto and in so doing has incurred expense; in such case, it becomes an easement running with the land."[11] There is no evidence that Azar incurred expense in reliance on the alleged license; accordingly, this enumeration fails.

3. Azar also challenged any interpretation of the special master's ruling that would allow USA Parking to encroach on his property as it is defined in his deed. The special master's ruling did not specifically address this issue, but we hold that any such encroachment would not be authorized by the rulings herein.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[11] OCGA § 44-9-4.

April 1, 2014

ON MOTION FOR RECONSIDERATION

Azar has moved for reconsideration arguing that affirming the trial court's judgment frustrates his right to address an alleged encroachment by USA Parking onto his property. But Azar's complaint sought relief only with respect to the disputed portions of the alley – not Azar's lot. Azar's complaint did not raise a claim for trespass as to his own property, nor did it raise issues with respect to encroachment onto his property. Accordingly, the trial court's judgment did not reach those issues, nor does this appeal.