**THIRD DIVISION**
**DOYLE, P. J.,**
**PIPKIN, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 24, 2023**

# In the Court of Appeals of Georgia

A22A1342. JONES et al v. LICK LOG CREEK, INC.

DOYLE, Presiding Judge.

Lick Log Creek, Inc., filed the underlying claims for declaratory relief and preliminary injunctive relief asking the trial court to find as a matter of law that it has a right of access across property owned by Carolyn Jones and her son, Eric Jones ("the Joneses"). The trial court granted summary judgment to Lick Log Creek, and the Joneses appeal, arguing that the trial court erred by granting summary judgment to Lick Log because (1) the easement was extinguished when they acquired title by prescription; (2) the express easement was abandoned; (3) there was a merger of title of the fee and easement; (4) the court improperly found they were estopped from asserting adverse possession, abandonment, and merger of title; and (5) their motion

for leave to amend and assert a counterclaim should have been granted. For the reasons that follow, we reverse.[1]

At the outset, we note that this Court reviews de novo a trial court's grant of summary judgment, construing all facts and inferences from those facts in the light most favorable to the nonmoving party. [T]he non-movant is not required to produce evidence demanding judgment for that party, but only to present evidence which raises a material issue of fact. Where the evidence on motion for summary judgment is ambiguous or doubtful, the party opposing the motion must be given the benefit of all reasonable doubts and of all favorable inferences and such evidence construed most favorably to the party opposing the motion.[2]

Viewed in this light, the record shows that Leonard Jones owned 159.60 acres of land ("Leonard Jones property") at the time he died in 1974. Leonard's will left all his property "real, personal[,] or mixed" to his wife, Maudie Jones, and the couple's seven children "to be theirs absolutely in fee simple without limitations, share and share alike." Based on this devise in the will, the estate traded 9.38 acres of land split between a lawyer and surveyor for their services in creating a plat that was recorded

---

[1] In their answer, the Joneses requested a jury trial as to any issues of fact.

[2] (Citations and punctuation omitted.). *Houston v. James*, 358 Ga. App. 510, 511 (855 SE2d 714) (2021). See also OCGA § 9-11-56 (c).

2

in October 1976. The plat shows 2 small tracts totaling 9.38 acres in the southeast corner of the rectangular property abutting an off-property road to the east and 8 additional tracts, 4 along the southern side of the property,[3] and 4 along the northern side of the property,[4] each of the 8 larger tracts totaling about 18 acres each.

Between the 4 large southern-side tracts and the 4 northern-side tracts, the surveyor added an area designated with solid lines and labeled 2.90 acre "50' Road R/W" ("50' Road") that ran east to west across the length of the original property. Additionally, two locations of a creek were labeled on the survey in dashed lines, and a "Dirt Road" was also labeled in dashed lines, which road ran south from the 50' Road across the eastern most large tract on the south side of the property ("Tract 1") to an adjoining property.[5] After the survey for the Leonard Jones property was completed, executor's deeds were prepared and recorded for each beneficiary for Tracts 1-8, which were labeled as such on the plat.

---

[3] These tracts were labeled 1 through 4, starting in the east.

[4] These tracts were labeled 5 through 8, starting in the east.

[5] The two small tracts that were on the southeast corner did not abut the 50' Road.

Robert Jones was deeded Tract 5, which was the northeastern-most tract of the 8 large tracts, which property he later left to Carolyn (his wife) and Eric (his son) — the respondents here. According to the plat, Tract 5 was bounded to the north and east with non-Leonard Jones property, to the south by the 50' Road and Tract 1, and to the west by Tract 6.[6] The executor's deeds were all the same except for the name of the heir and the tract number devised to that heir. Robert's deed stated that he was given:

> ALL THAT TRACT OR PARCEL of land laying and being in Land Lot 980 of the 2nd District, 3rd Section of Paulding County, Georgia, and being shown as Tract 5 containing 18.55 acres more or less, on plat survey entitled "Property Map of Leonard Jones Estate," dated September 2, 1976, revised September 21, 1976, recorded in Plat Book 7 Page 90, in the Office of the Clerk of the Superior Court of Paulding County, Georgia.[7]

Each deed also contained the following language:

> TO HAVE AND TO HOLD said property, together with all and singular the rights, members, hereditaments, improvements, easements, and appurtenances thereto belonging in any wise appertaining unto second

---

[6] This is an approximation based on the visual depiction in the plat because the executor's deeds do not contain descriptions of the individual tracts based on directions or metes and bounds.

[7] Maudie Jones was deeded Tract 1, which was in Land Lot 1037, south of Robert's tract.

party, her heirs, successors and assigns so that neither first parties in their official capacity nor their heirs, successors and assigns, nor any person or persons claiming under them shall have, claim or demand any right to the above described property, or its appurtenances.

The Joneses averred that the Dirt Road appearing on the plat is what is now the paved "Hightower Road," which is public and maintained by the county. Carolyn averred that Hightower Road was a dirt road until the 1990s or 2000s when the county paved the road up to her driveway, where it dead ends. The Joneses also contend that the 50' Road has never existed or been used as a road by any of the Leonard Jones heirs.

Since 1969, the Joneses maintained a house situated on the Leonard Jones property, believed to be within Tract 5 when the land was divided. Later, it was discovered that the house was actually within Tract 1, so Maudie Jones, who had been deeded Tract 1, sold Robert the northeastern portion of her tract that contained his home.

Eventually, all of the heirs, with the exception of the Joneses, sold their property, and a developer named 116 Nebo Ventures, LLC, ("116 Nebo") assembled almost all the original Leonard Jones property (or portions of the tracts that would

have covered the 50' Road) together in order to build a subdivision.[8] 116 Nebo paid Robert and various owners of the other tracts to provide it a quit claim of their interest in the 50' Road to the extent that it had not been deeded and was within the assemblage.

In addition to the Leonard Jones property, 116 Nebo purchased land north of the Leonard Jones property, which provided the assemblage with access to the public Nebo Road to the northwest. 116 Nebo filed a rezoning application in 2006, asking for rezoning from residential to a planned residential development of 316 units; the application contained a subdivision plat for the land it had acquired, including most of the Leonard Jones property. The new zoning and plan based on this plat contained a notation that the 50' Road in those former Tracts would be abandoned and showed multiple homes being built over the 50' Road in former Tracts 2-3 and 6-8. The planning commission approved the plan.

In 2008, 116 Nebo went insolvent, and it devised its interest in the property to River City Bank. The principals of Lick Log later purchased the property from the

---

[8] The assemblage included Tract 2, Tract 3, portions of Tract 8, portions of Tract 5, Tract 6, and Tract 7. An individual named Kimberly McClendon owns a portion of Tract 3, but she is not a party to these proceedings, and Lick Log does not have standing to assert arguments on her behalf.

River City Bank, adding more adjoining property to the assemblage including Tract 4 of the Leonard Jones property, and then deeded the property to Lick Log.

In 2015, the principals of Lick Log executed a license with the Joneses in which the Joneses allowed Lick Log to access its property through the Joneses' property past the end of Hightower Road. That license expired in 2016. Lick Log filed this action in 2020 in anticipation of selling the assemblage.

After a hearing on Lick Log's petition for a preliminary injunction, the trial court granted it temporary access over the Joneses' property to conduct limited testing on its property. In addition to its answer, the Joneses filed a motion to add a counterclaim, which the trial court denied. Thereafter, Lick Log and the Joneses filed cross-motions for summary judgment. After a hearing on the cross-motions, the trial court granted Lick Log's motion, finding that the Joneses were estopped from denying the existence of the 50' Road or Dirt Road or from asserting defenses regarding the existence of the Roads. This appeal followed.

1. The Joneses argue that the trial court erred by granting summary judgment to Lick Log. We agree and reverse the trial court's order. Because there are material questions of fact at issue, we remand for further proceedings consistent with this opinion.

(a) As an initial matter, we address the executors deeds and 1976 plat.

Under Georgia law, the crucial test in determining whether a conveyance grants an easement in[] or conveys title to[] land, is the intention of the parties, but in arriving at the intention many elements enter into the question. We must examine the whole deed[] and consider the recitals in the deed, the contract, the subject-matter, the object, purpose, []the nature of restrictions or limitations, and the attendant facts and circumstances of the parties at the time of making the deed.[9]

As an initial matter, the executor deeds and the plat are ambiguous. The contemplated 50' Road was designated by metes, bounds, and distances on the 1976 plat when the Leonard Jones property was divided by his estate. Nevertheless, the 50' Road was not expressly devised to any of the heirs at that time. And while the executor deeds contain a boilerplate reference to easements, there are no explicit easements granted to the heirs, only a reference to the 1976 plat, which also fails to expressly refer to any easement with regard to the 50' Road or Dirt Road.[10] The two

---

[9] (Citations and punctuation omitted.) *Ansley Walk Condo. Assn., Inc. v. Atlanta Dev. Auth.*, 362 Ga. App. 191, 197-198 (867 SE2d 600) (2021), quoting *Hardy v. United States*, 965 F3d 1338, 1344 (I) (A) (Fed. Cir. 2020), *Jackson v. Rogers*, 205 Ga. 581 (54 SE2d 132) (1949); *Johnson v. Valdosta, Moultrie & Western R. Co.*, 169 Ga. 559 (150 SE 845) (1929).

[10] Compare, e.g., *Deas v. Hughes*, 264 Ga. 9, 10 (440 SE2d 458) (1994) ("including in each deed the specific reservation of 'the right to build a road [or

8

roads are also delineated differently on the plat — the 50' Road is shown in solid lines like the individual property tracts, while the Dirt Road is shown in dashed lines. Moreover, Carolyn averred that the Dirt Road later became Hightower Road, a public road paved by the county. There is no evidence that the 50' Road was ever opened, accepted, or dedicated as a public road.[11]

That said, because the Leonard Jones estate owned the parcels on both sides of the contemplated 50' Road as well as the contemplated 50' Road itself, we presume that each parcel included a devise of the land in the contemplated 50' Road fronting the respective parcel up to the centerline of the proposed road.[12] 116 Nebo

driveway] through this lot . . . for the use of this lot and all lots to the northeast'").

[11] See *Fessenden v. Parrigin*, 228 Ga. 61, 62-63 (183 SE2d 771) (1971) (no evidence in the record showing that the land had ever been completed or used as a street or that it was ever accepted by the proper governing authorities). See also *Kelsoe v. Town of Oglethorpe*, 120 Ga. 951, 952-954 (48 SE 366) (1904) (evidence of acceptance and dedication of some streets did not automatically result in finding of acceptance of other platted streets). Compare *Pulte Home Co. LLC v. Juanita M. Aycock Living Trust*, 360 Ga. App. 225, 226-227 (1) (860 SE2d 820) (2021) (owner expressly dedicated roads indicated on subdivision plat for public use and recorded plat also contained notations reflecting the approval of the plat by various county entities).

[12] See *1845 La Dawn Lane v. Bowman*, 277 Ga. 741, 742 (1) (594 SE2d 373) (2004) ("When a grantor conveys property as bounded by a road that the grantor also owns, Georgia courts apply a rule of construction to hold that the deed conveys the fee interest that the grantor held in the road unless there is a clear expression of a

later acquired title to the proposed 50' Road within its assemblage via quit claim deeds, and as a matter of law, the Joneses own the portions contained in the land they retained.

(b) Next, we turn to the question of whether the 50' Road or an easement thereon remain. The trial court largely relies on *Zywiciel v. Historic Westside Village Partners, LLC*,[13] for the proposition that "mere nonuse" of an easement cannot result in abandonment of that easement. *Zywiciel* involved a public alley that was later abandoned by the city.[14] In response to the defendant's argument that the easement at issue was abandoned as a result of the city's abandonment of the alley, the trial

---

contrary intent."). See also *Johnson & Co. v. Arnold*, 91 Ga. 659, 666-667 (18 SE 370) (1893). This is the rule based upon the public policy goal of avoiding "the undesirable result of having long, narrow strips of land owned by people other than the adjacent landowner." *Bowman*, 277 Ga. at 742 (1).

[13] 313 Ga. App. 397, 400 (1) (721 SE2d 617) (2011).

[14] *Zywiciel* does not demand a holding in favor of Lick Log because the plaintiffs in *Zywiciel* did not hold title to the property for the prescriptive period. Moreover, there is nothing to suggest that the 50' Road in the instant case was a public road as was the case in *Zywiciel,* 313 Ga. App. at 398. *Northpark Assoc. No. 2, Ltd. v. Homart Dev. Co.*, 262 Ga. 138, 138-139 (414 SE2d 214) (1992), which was also cited by the trial court, does not demand a holding in favor of Lick Log. That case concerned the abandonment of a previously created public road by the county, and the time period necessary for prescriptive title had not passed. See id.

10

court, quoting *Tietjen v. Meldrim*,[15] found that because the alley appeared in the subdivision plat and the deeds of the defendant, the defendant was estopped from arguing that the easement did not exist.[16] The court went on to find that the plaintiffs retained an easement over the alley despite the city's abandonment of the alley.[17]

On the otherhand, *Tietjen* addressed an issue almost exactly like this case that arose in a subdivision after the developer of the subdivision went bankrupt and was unable to finish the development according to the plat filed with the county.[18] In *Tietjen*, the defendant property owner who lived in the bankrupted development began using some of the streets near her lots as her personal property, blocking them from other lot owners and making changes to them.[19] When the blocked owners filed suit against the defendant claiming a right to use the streets, she argued that the

---

[15] 169 Ga. 678 (151 SE 349) (1930) ("*Tietjen I*").

[16] *Zywiciel*, 313 Ga. App. at 399-400 (1).

[17] See *Zywiciel,* 313 Ga. App. at 398.

[18] See *Tietjen I*, 313 Ga. at 699.

[19] See id. at 692-694.

11

streets were abandoned because they were never constructed and were unused by the developer and other owners regardless of the fact that they appeared on the plat.[20]

*Tietjen* made its way to a jury and then to the Georgia Supreme Court three times.[21] In the first appearance of the case, the Supreme Court stated that

> when a grantor sells lots of land. . . and in his deeds describes them as bounded by streets, not expressly mentioned in the deeds, but shown upon a plat therein referred to as laid out in a subdivision of the grantor's land, he is estopped to deny the grantees' right to use the streets delineated in such plat. By parity of reasoning[,] those claiming under such conveyances are estopped from denying the existence of the streets so delineated upon the plat of the subdivision and given as boundaries of lots acquired by these and others from the grantor or those claiming under him. All persons claiming under such grantor are forever estopped to deny their existence.[22]

---

[20] See id.

[21] See id; *Tietjen v. Meldrim*, 172 Ga. 814 (159 SE 231) (1931) ("*Tietjen II*"); *Tietjen v. Meldrim*, 175 Ga. 843 (166 SE 186) (1932) ("*Tietjen III*")

[22] (Citations omitted.) *Tietjen I*, 169 at 697.

12

Nevertheless, the Court went on to explain that streets and roads delineated in a plat were "incorporeal hereditaments" of the lot owners, and as such, the easements to the streets and roads "may be extinguished under certain circumstances."[23] That is,

> an easement of way, acquired by grant, will not be lost by nonuse[] for any length of time, unless there is clear and unequivocal evidence of an intention to abandon it. *No presumption of abandonment* [of an express easement] arises from mere nonuse[] *for a time less than that required for the perfection of the easement by prescription.* When, however, such nonuse[] is accompanied by acts manifesting a clear intent to abandon, and which destroy the object for which the easements were created or the means of their enjoyment, an abandonment will take place.[24]

The Court then reversed the jury verdict, the case returned to the trial court where a nonsuit occurred, and the case was again appealed.[25] In *Tietjen II*, the Georgia Supreme Court again reversed the trial court, explaining that "[a]bandonment is largely a question of intent. This intent is inferable from the acts of the parties,

---

[23] Id. at 699.

[24] (Emphasis supplied.) 169 Ga. at 699.

[25] See id. at 701-702.

13

interpreted in the light of all the surroundings. Abandonment is a mixed question of law and fact."[26]

The case returned to the trial court for a third time before returning to the Supreme Court once more.[27] In the third appeal, the Supreme Court affirmed the jury's verdict in favor of the defendant property owner, which verdict was based on the jury's findings that the disputed easements and roads in the subdivision had been abandoned, and that the defendant had made improvements to the land previously intended to be streets.[28]

In this case, like in *Tietjen*, there are questions of fact as to abandonment and alternatively adverse possession that need to be resolved by a jury.[29] That evidence

---

[26] (Citations and punctuation omitted.) *Tietjen II*, 172 Ga. at 815.

[27] See id.

[28] See *Tietjen III*, 175 Ga. at 845-846 (listing special jury questions in the description of the case).

[29] See, e.g., *Georgia Power Co. v. Irvin*, 267 Ga. 760, 766 (2) (482 SE2d 362) (1997) (adverse possession is a mixed question of law and fact); *Houston*, 358 Ga. App. at 514-516 (question of fact as to the issue of adverse possession); *Donald Azar Inc. v. Muche*, 326 Ga. App. 726, 729 (1) (761 SE2d 345) (2014) (question of abandonment is for the finder of fact), quoting *Duffy St. S.R.O. v. Mobley*, 266 Ga. 849 (1) (471 SE2d 507) (1996); *Walker v. Sapelo Island Heritage Auth.*, 285 Ga. 194, 198 (2) (674 SE2d 925) (2009) (listing indicia of possession for prescriptive title claim). See also *Kelsoe*, 120 Ga. at 955 (48 SE 366) (1904) ("Non-user of a street for

14

includes, among other things: Carolyn's averment that the 50' Road has never existed; satellite photographs showing no current existence of the 50' Road across any of the former Leonard Jones property; the Joneses' actions of building portions of its house over the alleged area of the 50' Road, their placement of a septic system in the easement, and planting of trees and other landscaping in the easement for over 40 years; 116 Nebo's consolidation of the remaining Leonard Jones property, purchase of additional land to access the property from another road, submission of a new plat to the county to support its rezoning application, and including on its plat that it was abandoning the easement over the 50' Road[30]; and Lick Log's license agreement with the Joneses allowing Lick Log to access its property over the Joneses' property.[31]

---

a period of some [40] years, as was shown in the present case to be true, certainly ought to raise a very strong presumption of abandonment.").

[30] Although Lick Log's predecessor in interest, 116 Nebo did not expressly state that it was abandoning the 50' Road across the Joneses land in its 2006 subdivision plat, the only logical conclusion is that it was so doing because it could not simultaneously maintain its portion of the easement across the Joneses property without also maintaining the portion of the easement across its own property.

[31] See *Tietjen I, II, and III*; *Pass v. Forestar Ga. Real Estate Group*, 337 Ga. App. 244, 246 (787 SE2d 250) (2016) (regarding a private road, a question of fact existed as to the issue of whether plaintiff had abandoned the private access way through nonuse, existence of gate to block the way, and city's abandonment of the

Accordingly, we reverse the trial court's order granting summary judgment to

Lick Log and remand for further proceedings consistent with this opinion.[32]

2. The Joneses also contend that the trial court erred by not allowing them to

assert an adverse possession counterclaim.

> The determination of whether justice requires the grant of leave
> to set up an omitted counterclaim is a matter which addresses itself to
> the sound discretion of the trial court. Moreover, because the failure to

public road); *Mobley*, 266 Ga. at 849-850 (1) (affirming a denial of motion for new trial following jury finding that the easement had been abandoned when, in addition to nonuse, the predecessor in title had blocked the easement with a fence); *Central of Ga. R. v. DEC Assoc.*, 231 Ga. App. 787, 789 (1) (a) (501 SE2d 6) (1998) (holding abandonment by nonuse for over 25 years of an unrecorded written easement). See also *Fessenden*, 228 Ga. at 62-63; *Kelsoe*, 120 Ga. at 952-954. Compare *905 Bernina Avenue Cooperative v. Smith/Burns LLC*, 342 Ga. App. 358, 358-359 & 366 (2) & 371-372 (4) (802 SE2d 373) (2017) (holding that, inter alia, because the fence was erected only shortly before suit was filed, there was no issue as to adverse possession or abandonment of an express easement); *Sermons v. Agasarkisian*, 323 Ga. App. 642, 646-647 (1) (746 SE2d 596) (2013) ("While there appears to be some conflict in the Supreme Court of Georgia's authority on whether an express easement may be abandoned by nonuse for a period of 20 years, we need not address this issue because the Sermons did not own the property more than 20 years before they undisputedly took action in 2002 to maintain a portion of the alley and in 2008 to actively use the alley for vehicle ingress and egress"); *Zywiciel,* 313 Ga. App. at 400 (1) (no abandonment of easement when plaintiffs used alley prior to defendants' purchase of property and after the city had abandoned the alley).

[32] We again acknowledge the varying authority on the issue of abandonment of an express easement. See *Sermons*, 323 Ga. App. at 646-647 n.3 (collecting cases as to this issue).

plead a compulsory counterclaim can result in loss of that counterclaim forever, the courts generally should be forgiving when leave is sought to add compulsory counterclaims, at least so long as the plaintiff makes no showing of prejudice.[33]

Based on our reversal of the trial court's grant of summary judgment, the trial court should reconsider the Joneses's motion for leave to amend their answer to add any counterclaims.

*Judgment reversed. Pipkin, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[33] (Citation and punctuation omitted.) *Boyd v. JohnGalt Holdings, LLC*, 294 Ga. 640, 642 (1) (755 SE2d 675) (2014), quoting *Hampton Island v. Asset Holding Co. 5*, 320 Ga. App. 880, 884 (2) (740 SE2d 859) (2013).