**In the Matter of HUCKABEE AUTO COMPANY, Debtor.**

**TRUST COMPANY BANK OF MIDDLE GEORGIA, N.A., As Executor Under the Will of Leo B. Huckabee, Sr., Plaintiff,**

v.

**HUCKABEE AUTO COMPANY, Mrs. Randall A. Huckabee, and General Motors Acceptance Corporation, Defendants.**

**Bankruptcy No. 80–00151.**
**Adv. No. 85–5002.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

March 17, 1986.

See also 33 B.R. 141, and 46 B.R. 741.

Hubert C. Lovein, Jr. of Jones, Cork & Miller, Macon, Ga., for plaintiff.

Joseph J. Burton, Jr. of Swift, Currie, McGhee & Hiers, Atlanta, Ga., for Huckabee Auto Co. and Mrs. Randall A. Huckabee.

Jerry B. Marshall of Mullis, Marshall, Lindley & Powell, Macon, Ga., for General Motors Acceptance Corp.

## MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

### STATEMENT OF THE CASE

ROBERT F. HERSHNER, Jr., Chief Judge.

On November 29, 1984, Trust Company Bank of Middle Georgia, N.A., as executor under the will of Leo B. Huckabee, Sr., Plaintiff, filed a complaint in the Superior Court of Bibb County, Georgia, against Huckabee Auto Company, Mrs. Randall A. Huckabee, and General Motors Acceptance Corporation, Defendants. In its complaint, Plaintiff requested the superior court to enter a declaratory judgment, declaring that a security interest in the high-rise building, including the part which extends over the alley, was included in a certain deed to secure debt.[1] In the alternative, Plaintiff requested the superior court to reform the deed to secure debt to include certain airspace rights.

On January 2, 1985, Huckabee Auto Company filed with this Court an "Application for Removal of Cause to United States Bankruptcy Court for the Middle District of Georgia, Macon Division."[2] The Court held a hearing on the application for removal on February 8, 1985, and Plaintiff agreed to the removal of its complaint to this Court.

Before the Court are the parties' cross-motions for summary judgment. Plaintiff's motion for summary judgment was filed on June 3, 1985, and Defendants' motion for summary judgment was filed on July 1, 1985. The parties have stipulated into evidence certain documents and a deposition for the Court's consideration. The Court, having considered the briefs, documents, and deposition offered by the parties, is of the opinion that Plaintiff's motion should be granted and Defendants' motion denied. In support of its conclusion, the Court publishes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The facts are not in dispute, and the Court will recite those facts before applying the applicable law. On May 13, 1947, Huckabee Auto Company acquired a 150–

1. General Motors Acceptance Corporation is named as a party to this adversary proceeding because it holds a deed to secure debt executed by Huckabee Properties, Inc. on July 22, 1980, which is subordinate to Plaintiff's deed to secure debt. General Motors Acceptance Corporation's deed recites that certain airspace rights are included as part of the security. General Motors Acceptance Corporation does not oppose the relief that Plaintiff seeks.

2. Debtor filed its application pursuant to 28 U.S.C.A. § 1478(a) (West Supp.1985) and R.Bankr.P. 9027.

foot by 58.8–foot lot on Pine Street from Home Investment Company, Inc. Huckabee Auto conveyed this lot to Huckabee Properties, Inc. on January 29, 1963. Huckabee Properties wanted to build a high-rise parking garage on this lot, but there was insufficient space on the lot for a garage. There was no available space bordering the lot that Huckabee Properties could acquire. A public alley belonging to the City of Macon, Georgia, bordered one side of the lot for approximately 150 feet. At Huckabee Properties' request, the Georgia General Assembly authorized [3] the City of Macon to grant to Huckabee Properties in 1964 a quitclaim deed covering "the fee simple title in and to all of the air space ... lying above the 10 foot public alley ... [with] a width equal to the full width of said 10 foot public alley in length...." Huckabee Properties duly recorded the quitclaim deed to the airspace rights. With its acquisition of the airspace rights, Huckabee Properties was then able to go forward with construction of a high-rise parking garage.

Huckabee Properties erected the high-rise parking garage in 1964. Except for a few inches, the foundation of the building takes up all of the Huckabee Properties' lot. The high-rise parking garage has five floors. The first two floors are slightly inclined, and the upper three floors are level. Concrete ramps provide the only access for automobiles to the second, third, fourth, and fifth floors of the high-rise garage. These ramps were constructed as an integral part of the garage and extend into the airspace over the public alley. Since construction, the high-rise garage has always been used in connection with Huckabee Auto's business operations. The first floor of the high-rise garage contains a paint and body shop, and the other four floors are used for automobile storage.

On August 13, 1976, Huckabee Auto, Huck's Rambler, Inc., Huckabee Buick, Inc., Leo B. Huckabee, Jr., and Mr. Hucka-

bee, Sr., entered into a stock redemption agreement. Under this agreement, all of Mr. Huckabee, Sr.'s stock in the corporations was redeemed, and in exchange for the stock, the corporations gave Mr. Huckabee, Sr., promissory notes. As part of the security for the promissory notes, Mr. Huckabee, Sr., was to receive a deed to secure debt on the high-rise garage property ("high-rise property"). A description of the high-rise property was attached to the redemption agreement. It referred to this property as the same property that Huckabee Auto had received from Home Investment Company, Inc. in 1947. The description in the redemption agreement did not mention the airspace rights that Huckabee Properties had acquired from the City of Macon, nor did it mention the high-rise parking garage.

The deed to secure debt that Mr. Huckabee, Sr., received as security for the promissory notes was duly filed on December 30, 1976. In that deed, there was no mention of the airspace rights or of the high-rise parking garage. The terms of the deed provide that Mr. Huckabee, Sr., as grantee, has and holds "said property and its appurtenances forever in Fee Simple."

In 1977, Mr. Huckabee, Sr., died. His security interest in the high-rise property passed to his estate, which Plaintiff administers as executor under Mr. Huckabee, Sr.'s will.

On February 8, 1980, Huckabee Auto and Huckabee Properties filed their petitions under Chapter 11 of the Bankruptcy Code. Huckabee Auto, Huckabee Properties, Mr. Huckabee, Jr., and Plaintiff entered into a settlement agreement on December 4, 1981, which was later incorporated into Huckabee Auto's plan of reorganization. Under the terms of this agreement, the estate of Mr. Huckabee, Sr., retained a first priority deed to secure debt on the high-rise property, and Huckabee Auto re-

---

3. In authorizing the City of Macon to grant the airspace rights to Huckabee Properties, the Georgia General Assembly stated that the airspace rights were "needed by Huckabee Proper-

ties, Inc. in connection with the erection and operation of a parking garage and related activities."

tained the use of the property for five years without any rent obligation. Under the terms of the settlement agreement, Plaintiff has the right to sell the high-rise property at any time and at any price after the confirmation of the Chapter 11 plan.[4] The power of attorney accompanying the settlement agreement described the high-rise property as property located at "454 Pine Street." The airspace rights and high-rise parking garage once again were not specifically mentioned. In article three of the agreement, Huckabee Properties agreed, in the event that a sale of the property was ever necessary, "to cooperate fully in the sale of the Highrise Property, including ... executing a warranty deed, and all other documents necessary to consummate the sale of the Highrise Property...."[5]

After the execution of the settlement agreement, Mr. Huckabee, Jr., as an officer of Huckabee Auto, entered into negotiations with Plaintiff to purchase the high-rise property from the estate of Mr. Huckabee, Sr. His offer for the high-rise property was not accepted by Plaintiff. In a letter dated January 19, 1984, Mary D. Kearnes, first vice president and trust officer of Plaintiff, made a counter offer on the property. Mr. Huckabee, Jr., was evidently of the opinion that the counter offer was considerably higher than what Plaintiff originally would have taken for the property. In his deposition, Mr. Huckabee, Jr., testified that the letter he received from Mrs. Kearnes made him mad because he thought that her counter offer was unfair.

On January 20, 1984, Mr. Huckabee, Jr., as chairman of the board, signed a deed from Huckabee Properties and Huckabee Auto to his wife, Mrs. Randall A. Huckabee. This deed purported to convey the airspace rights to Mrs. Huckabee. Mrs. Huckabee duly recorded the deed in Bibb County, Georgia. Mr. Huckabee, Jr., testified that the consideration for this conveyance was a 1983 loan that his wife had made to Huckabee Auto and Huckabee Properties. He testified further that he did not know why he had not thought of giving her the airspace rights at an earlier date as consideration for her 1983 loan.

On February 2, 1984, Mr. Huckabee, Jr., as chairman of the board of Huckabee Auto, sent a letter to Plaintiff. In this letter, he wrote that "[t]he Bank apparently does not realize that the Estate of Leo B. Huckabee, Sr. has no claim on the air space over the alley which contains the ramps ... and provides the only access to the upper floors of the highrise." If the property is foreclosed upon under the deed to secure debt, Mr. Huckabee, Jr., and his wife indicate that they will block the use of the ramps which intrude into the airspace over the alley.

## CONCLUSIONS OF LAW

Under the terms of the Court's confirmation order dated January 28, 1982, the Court retained jurisdiction to determine any issues that might arise in the case, and the parties to this adversary proceeding have submitted to the Court's exercising this jurisdiction. The deed to secure debt that is now in question is an integral part of the settlement agreement which was incorporated into the confirmed plan of reorganization, and the parties, pursuant to Rule 7001(9),[6] have submitted to this Court the question of whether Plaintiff, as the executor of the estate of Mr. Huckabee, Sr., has a security interest in the high-rise building, including that part of the high-rise building which extends over the alley.

Under Georgia law, a deed conveying land conveys all structures permanent-

---

4. In accordance with the settlement agreement, Huckabee Properties agreed to execute and deliver to Plaintiff a power of attorney, enabling Plaintiff to sell the high-rise property.

5. In 1982, Huckabee Auto reacquired title to this lot and the high-rise parking garage built upon

it from Huckabee Properties as a result of a merger of Huckabee Auto and Huckabee Properties.

6. R.Bankr.P. 7001(9).

ly affixed to the land which constitute a part of the realty. G. Pindar, *Georgia Real Estate Law and Procedure* § 19–162 (2d ed. 1979); *Simpson v. Tate*, 226 Ga. 558, 559–60, 176 S.E.2d 62, 64 (1970); *cf.* O.C.G.A. §§ 44–1–2, 44–1–6 (Michie 1982); *Johnson Central Service of Georgia, Inc. v. Emory University*, 170 Ga.App. 493, 496, 317 S.E.2d 303, 306 (1984); *State v. Dyson*, 89 Ga.App. 791, 793, 81 S.E.2d 217, 219 (1954). Under the deed to secure debt that Huckabee Properties executed to Mr. Huckabee, Sr., Mr. Huckabee, Sr., took a security interest in the high-rise property. At the time the deed was executed, the high-rise parking garage was permanently affixed to the land described in the deed to secure debt. The Court, therefore, concludes that the high-rise building constitutes a part of the realty, and that Mr. Huckabee, Sr., took a security interest in the building at the time the deed to secure debt was executed.

The next question for the Court is whether Plaintiff holds a security interest in the ramps that are a part of the high-rise parking garage. Fixture is defined in section 44–1–6 of the Georgia Code.[7] This section provides that "[a]nything which is intended to remain permanently in its place even if it is not actually attached to the land is a fixture which constitutes a part of the realty and passes with it." O.C.G.A. § 44–1–6(a) (Michie 1982). "As between grantor and grantee the strict rule of the common law prevails, that, in the absence of an agreement to the contrary, all fixtures, whether actually or constructively annexed to the realty, pass by a conveyance of the freehold." *Brigham v. Overstreet*, 128 Ga. 447, 450, 57 S.E. 484, 486 (1907) (citing *Wolff v. Sampson*, 123 Ga. 400, 402, 51 S.E. 335, 336 (1905)). If the Court concludes that the ramps constitute a fixture, then the ramps constitute a part of the realty and Mr. Huckabee, Sr., took a security interest in them.

■ The evidence shows that at the time that Huckabee Properties constructed the high-rise building, Huckabee Properties intended to use the building only as a parking garage. To make such a use possible, Huckabee Properties had concrete and steel ramps built onto the high-rise building, with the ramps providing the only access for automobiles between the five floors. The Court finds that the ramps are an integral part of the building and were intended by Huckabee Properties to remain permanently in their place. The Court concludes that the ramps are fixtures and constitute a part of the realty. Consequently, Mr. Huckabee, Sr., also took a security interest in the ramps under the deed to secure debt.

The final question that remains is what effect did the failure to specifically mention the airspace rights in the deed to secure debt have upon the rights of the parties to that deed. Defendant asserts that the airspace rights were not included because there was no express conveyance of such rights in the deed to secure debt. Plaintiff asserts that such rights were included as appurtenances to the land or as an easement of necessity.

Black's Law Dictionary defines appurtenance as:

"Something annexed to another thing more worthy as principal, and *which passes as incident to it, as a right of way or other easement to land* .... A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, or watercourse, or of a passage for light, air, or heat from or across the land of another."

Black's Law Dictionary 94 (5th ed. 1979) (emphasis added).

Under Georgia law, "the grant of real estate includes a grant of existing appurtenances and easements." *Muscogee Manufacturing Co. v. Eagle & Phenix Mills*, 126 Ga. 210, 226, 54 S.E. 1028, 1035 (1906). "The rule, however, applies only to such things as are incident to the grant and directly necessary to the enjoyment of the thing granted .... [This includes] all

7. O.C.G.A. § 44–1–6 (Michie 1982).

those easements which are necessary to the reasonable enjoyment of the property granted, and which have been and are at the time of the grant used by the owner of the entirety for the benefit of the part granted...." *Id.* at 225–26, 54 S.E. at 1034–35. The deed to secure debt which Huckabee Properties executed to Mr. Huckabee, Sr., contained a clause expressly conveying the high-rise property "and its appurtenances forever in Fee Simple" to Mr. Huckabee, Sr., his "successors, heirs, executors, administrators and assigns." The Court, therefore, must determine whether the airspace rights were appurtenances to the high-rise property at the time that the deed to secure debt was executed.

The evidence establishes that Huckabee Properties acquired the airspace rights in 1964 and acquired the airspace rights specifically for use in connection with the high-rise parking garage. When Huckabee Properties executed the deed to secure debt to Mr. Huckabee, Sr., it owned both the high-rise property and the airspace rights. From the time Huckabee Properties erected the building until the present time, the building has been used by Huckabee Properties only as a high-rise parking garage. Use of the airspace is necessary and essential for the building's proper use. Without the use of the airspace over the alley, the ramps could not be used. There is no other space available on the high-rise property upon which to construct other ramps, and the construction of the building does not lend itself to the construction of additional ramps. Because the airspace rights "are incident to the grant and directly necessary to the enjoyment of the [property]"[8] and were used at the time the deed to secure debt was executed by Huckabee Properties, the Court concludes that the airspace rights were included as appurtenances in the deed to secure debt. When Mr. Huckabee, Jr., executed a deed purporting to convey the airspace rights to his wife on behalf of Huckabee Auto and Huckabee Properties,

it was done subject to the security interest of Plaintiff.

Based upon the foregoing, the Court finds that Plaintiff has carried its burden of proving that there is no genuine issue of material fact, and that Plaintiff is entitled to judgment as a matter of law on its motion for summary judgment. Defendants' motion for summary judgment therefore must be denied. *See* R.Bankr.P. 7056; Fed.R.Civ.P. 56(c). *See also Dixie Stevedores, Inc. v. Marinic Maritime, Ltd.*, 778 F.2d 670, 673 (11th Cir.1985); *Wong v. Bailey*, 752 F.2d 619, 620 (11th Cir.1985); *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir.1984); *Morrison v. Washington County, Alabama*, 700 F.2d 678, 682 (11th Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Under the deed to secure debt executed by Huckabee Properties, the Plaintiff, as executor under the will of Mr. Huckabee, Sr., has a security interest in the high-rise building, including that part of the high-rise building which extends into the alley, and this necessarily carries with it the right to use the airspace over the alley. Because the Court reaches this conclusion, it is unnecessary for the Court to reform the deed to secure debt.

---

8. *Muscogee,* 126 Ga. at 225, 54 S.E. at 1035.