## A96A1998. FULTON COUNTY BOARD OF ASSESSORS v. McKINSEY & COMPANY, INC.
### (481 SE2d 580)

SMITH, Judge.

This is an appeal from the superior court's decision that certain improvements to leased space are not taxable to the taxpayer/lessee, McKinsey & Company. Because the improvements at issue are fixtures taxable as realty, and because the lease does not create an estate for years in McKinsey, we affirm the trial court's conclusion that the improvements are not taxable as personal property.

The following facts were stipulated in the trial court by McKinsey and the Fulton County Board of Assessors: McKinsey occupies space in the Georgia Pacific Center pursuant to a written lease. When McKinsey first leased the premises in 1986, the leased space was unimproved. Pursuant to the lease, the owner of the property paid a large portion of the cost of improvements for occupancy by McKinsey as office space, and McKinsey paid the remainder of the cost. The improvements consisted of "all construction, including walls, doors, floor coverings, electrical, plumbing, heating and air distribution systems, ceilings, and lighting." Since 1986 McKinsey has also paid for the construction of other improvements necessary for occupancy of the space.

After McKinsey filed its 1994 tax return of tangible personal property, the assessor issued a tax assessment valuing McKinsey's tangible personal property at an amount greater than that included

in McKinsey's return. A portion of the increase was attributable to the inclusion of the value of computer wiring and other miscellaneous property, which McKinsey agrees is proper. The remainder of the increase represented the depreciated value of the cost of construction of improvements to the space occupied by McKinsey. McKinsey contended this portion of the increase in the assessment was improper and appealed from the notice.

On further review, the assessor again increased the value of McKinsey's tangible personal property. Its final valuation of personal property was $2,815,546. This amount was again attributable to the inclusion of depreciated cost of construction of improvements to the space occupied by McKinsey. On McKinsey's appeal from this valuation, the Board of Equalization concluded that the fair market value of McKinsey's tangible personal property was $2,533,930 (an amount slightly less than the value determined by the assessor). McKinsey then appealed to the Superior Court of Fulton County, and the parties stipulated the above-recited facts. They also stipulated the sole issue to be determined by the trial court: "[W]hether the depreciated cost of improvements to the leased premises (leasehold improvements) paid for by [McKinsey] may be assessed against [McKinsey] as its tangible personal property."

1. In a well reasoned order, the trial court concluded that the improvements are fixtures and consequently not taxable as tangible personal property. We agree. The General Assembly has classified real property as "(1) All lands and the buildings thereon; (2) *All things permanently attached to land or to the buildings thereon* [emphasis supplied]; and (3) Any interest existing in, issuing out of, or dependent upon land or the buildings thereon." OCGA § 44-1-2 (a). Fixtures are also included in this classification, defined as "[a]nything which is intended to remain permanently in its place even if it is not actually attached to the land." OCGA § 44-1-6 (a). Fixtures pass with the realty. Id. "Under our law, real property includes not only the land but all improvements thereon. . . . Thus, unlike items of personalty, the realty and the improvements thereon cannot be separated from each other." *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, 186 Ga. App. 723, 725 (368 SE2d 326) (1988).

The improvements at issue are attached to and form an integral part of the building, and as aptly stated by the trial court, "their removal would do injury to the realty." As such, they are fixtures and comprise a part of the real estate. We note incidentally that even if fixtures did not constitute real property by operation of law, the lease itself contemplates that the improvements are to remain a part of the property at the end of the lease term. In addition, the lease reveals that the parties contemplated that any increase in ad valorem taxes would be assessed to the owner, who could then demand that McKin-

sey pay the increase. Because the improvements are fixtures and therefore by law are a part of the realty, see, e.g., *Ga. Utilities Co.*, supra, the improvements were improperly assessed as personal property.

2. Apparently conceding that the improvements are part of the realty, Fulton County argues that the interest held by McKinsey is an estate for years as opposed to a usufruct and consequently that McKinsey is subject to taxation. We find no merit in this argument. First, the assessment at issue was on personal property. If the assessor had desired to attempt assessment of the real estate as an estate for years, it could have done so. Second, no estate for years exists under the lease. It is true that a presumption exists that a lease term for more than five years creates an estate for years, which is a taxable estate. *Clayton County Bd. of Tax Assessors v. City of Atlanta*, 164 Ga. App. 864, 865-866 (298 SE2d 544) (1982). This presumption may be overcome, however, if the facts surrounding the lease reveal the parties' intent to create a mere usufruct, which is not a taxable estate. Id. at 866. See also *Camp v. Delta Air Lines*, 232 Ga. 37, 39-40 (205 SE2d 194) (1974).

As in *Camp*, the lease provisions here "are incompatible with an estate for years as defined by Georgia law" and convey a "circumscribed and limited use of the premises . . . characteristic of a usufruct." (Punctuation omitted.) Id. at 40. The lease restricts subletting and assignment rights "in a manner inconsistent with an estate for years which normally can be alienated without the grantor's consent." Id. at 41. It also restricts use of the space to office space only. In addition, the lease prohibits the changing of locks by McKinsey and provides that the landlord may enter the property whenever the landlord deems it reasonably "necessary or desirable" for certain enumerated purposes. As in *Camp*, the lease requires the consent of the landlord to make alterations. Id. at 41. The lease also requires McKinsey to abide by a list of 23 rules and regulations. It also obligates the landlord to provide certain services such as janitorial service, heating, air-conditioning, and elevator service, duties "which generally are not characteristic of grantors of estates for years." *Camp* at 40-41. The lease clearly shows that McKinsey "does not have an estate for years, carrying with it the right to use in as absolute a manner as a greater estate. The quantity and quality of [McKinsey's] rights under the present lease point to a conclusion that it creates only a usufruct." (Citations and punctuation omitted.) Id. The trial court did not err.

*Judgment affirmed. Andrews, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 12, 1997 —

W. *Roy Mays III*, for appellant.
*Ragsdale, Beals, Hooper & Seigler, David K. Beals*, for appellee.