**FIRST DIVISION
BARNES, P. J.,
MCFADDEN, P.J. and MERICER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 27, 2017**

# In the Court of Appeals of Georgia

A17A0062, A17A0063. 905 BERNINA AVENUE COOPERATIVE, INC. et al. v. SMITH/BURNS LLC et al.; and vice versa.

McFADDEN, Presiding Judge.

This is a dispute between neighbors over the actual location of their common boundary line and the existence of easements in a disused railroad spur track and an alley. The spur track is on the boundary line between the two properties. The alley runs alongside both properties and provides access from a public street to the spur track. The parties to the litigation are plaintiffs Smith/Burns LLC, which owns property located at 331 Elizabeth Street, and its members, Gerald R. Burns and David P. Smith (collectively, "the plaintiffs"); and defendants 905 Bernina Avenue Cooperative, Inc. ("the Co-op"), which owns property located at 905 Bernina Avenue,

and Thomas and Janet Berry, who are officers and shareholders of the Co-op and lease a residential unit in the 905 Bernina building (collectively, "the defendants").

The dispute, in a nutshell, is as follows. Years ago, a common owner developed the parties' properties as part of a group of warehouses with attached platforms backing up to a railroad spur track. Today, the spur track is filled in with concrete and level with the platforms. The buildings at 905 Bernina and 331 Elizabeth sit across the spur track from each other. The spur track is on the 905 Bernina property. An alley runs next to both properties, providing access to the filled-in spur track.

The parties' dispute arose when the defendants installed a fence on the spur track and on a portion of the platform attached to the building at 331 Elizabeth. Once the dispute over the fence arose, the plaintiffs also objected to obstructions the defendants had built in the portion of the alley adjacent to 905 Bernina. The multiple pleadings in this case set forth the following claims. The plaintiffs seek a declaration that plaintiff Smith/Burns owns the platform attached to its building at 331 Elizabeth; a declaration that plaintiff Smith/Burns has an express or prescriptive easement over the spur track; an injunction requiring the defendants to remove the fence; a declaration that plaintiff Smith/Burns has an easement to use the entire alley adjacent to both properties; an injunction requiring the defendants to remove the obstructions

2

in the alley; and damages for trespass and interference with property rights. The defendants argue that the boundary line between 905 Bernina and 331 Elizabeth extends to the wall of the building at 331 Elizabeth, making the platform attached to the building at 331 Elizabeth part of the defendant Co-op's property. They seek a declaration that "no one other than the [defendant] Co-[o]p and its shareholders has any easement or ownership right in the Co-[o]p's [p]roperty nor any other right to use the Co-[o]p's [p]roperty."

The parties filed cross motions for partial summary judgment on the issues regarding their rights in the platform, the spur track, and the alley. (The motions for partial summary judgment did not address the plaintiffs' entitlement to damages for trespass, and that issue remains pending below. ) The trial court appointed a special master to consider the motions, and the special master issued a report recommending that the trial court:

(1) declare that plaintiff Smith/Burns has fee simple title in the land on which the platform attached to the building at 331 Elizabeth sits;

(2) declare that an express, nonexclusive easement in the spur track exists for the benefit of the property at 331 Elizabeth and its owners, the plaintiffs;

3

(3) declare that the defendants' property line "extends out and up to the edge of" the platform attached to the building at 331 Elizabeth, but is subject to the plaintiffs' easement rights in the spur track; and

(4) declare that the plaintiffs do not have an express easement in the alley.

The special master also recommended that the trial court order:

(1) the defendants to remove all structures located on the platform attached to the building at 331 Elizabeth and those structures that block the spur track area;

(2) the parties to secure a survey of the land to illustrate the above declarations;

(3) the clerk of the superior court to record in the public deed records the special master's report, the trial court's final order, and the above-described survey; and

(4) the parties to pay special master's fees and costs in compliance with the order appointing the special master.

The special master attached to her report a demonstrative sketch of the properties, which is shown here for demonstrative purposes only.



BERNINA AVENUE

ELIZABETH STREET

PERPENDICULAR ALLEY

331 ELIZABETH
STREET BUILDING

905 BERNINA
AVENUE BUILDING

ALLEY

SMITH/BURNS

THE CO-OP

KEY:

331 Platform

SPUR TRACK/DOCK
EASEMENT

905 Platform

5

Over objections from both sets of parties, the trial court adopted the special master's report. Although the trial court did not expressly state that he was ruling on the motions for partial summary judgment, his ruling had the effect of granting partial summary judgment to the plaintiffs as to the platform and spur track and granting partial summary judgment to the defendants as to the alley. See *Quarles v. Quarles*, 285 Ga. 762 (683 SE2d 583) (2009). Both sets of parties appealed to the Supreme Court of Georgia, which transferred the appeals to this court because the appeals "arise from a suit over a disputed boundary line and easement rights."

As detailed below, we find that, as a matter of law, the plaintiffs were entitled to a declaration that plaintiff Smith/Burns had fee simple title to the platform attached to the building at 331 Elizabeth and to declarations that the plaintiffs/owners of 331 Elizabeth had an express easement in both the spur track and the alley. In other words, the plaintiffs were entitled to partial summary judgment on the platform, spur track, and alley issues. So we affirm that part of the trial court's order adopting the special master's recommended declarations regarding the platform and spur track and requiring the defendants to remove structures obstructing the platform and spur track,

6

but we reverse that part of the trial court's order adopting the special master's recommended declarations regarding the alley. Given this disposition, we vacate that part of the trial court's order adopting the special master's remaining recommendations and remand the case for further proceedings consistent with this opinion.

Finally, we do not address the plaintiffs' claim on appeal that the trial court erred in dismissing an earlier version of the plaintiffs' trespass claim, because the plaintiffs subsequently amended their complaint to reassert a claim for tresspass, and that claim remains pending below.

1. *Facts*.

Even though this case involves recommendations by a special master, because the parties made the decision to move for partial summary judgment, the standards governing motions for summary judgment and their review on appeal apply. *Boyd v. JohnGalt Holdings, LLC*, 294 Ga. 640, 644 (4) n. 6 (755 SE2d 675) (2014). "[T]o prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to a judgment as a matter of law." *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted). When a plaintiff moves for summary

7

judgment, he "has the burden of establishing the absence or non-existence of any defense raised by the defendant." *Vance v. FD 2011-C1 Grove Rd.*, 340 Ga. App. 36 (795 SE2d 747) (2016) (citation and punctuation omitted). When a defendant moves for summary judgment, he has the burden of "either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." *Cowart*, supra at 623 (1) (a) (citation and punctuation omitted). "We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. Because this opinion addresses cross-motions for summary judgment, we will construe the facts in favor of the nonmoving party as appropriate."*Maree v. ROMAR Joint Venture*, 329 Ga. App. 282, 283 (763 SE2d 899) (2014) (citation omitted).

So viewed, evidence shows that the properties at issue — 331 Elizabeth and 905 Bernina — descend from a parcel of land described, on a plat recorded in 1915, as the Copenhill Land Company property. 331 Elizabeth is comprised of portions of Lots 4 and 5 of Copenhill. 905 Bernina is also comprised of portions of Lots 4 and 5, along with portions of Lots 8 and 9 and the entirety of Lot 10 of Copenhill. The contested alley runs along both 331 Elizabeth and 905 Bernina and was depicted on the 1915 Copenhill plat.

(a) *Agreements and conveyances prior to divergence of title of 331 Elizabeth and 905 Bernina.*

In 1926, S. J. Pattillo[1] acquired Lots 4 through 10 of Copenhill. Two years earlier, Pattillo had entered into an agreement with the owner of a neighboring parcel, Milton Klein, to build a railroad spur track that would run through Klein's property and the property that Pattillo later acquired and link with a nearby railroad line. (This agreement states, apparently erroneously, that Pattillo already owned the property. The parties did not file this agreement until 1927, after Pattillo had acquired the property. ) Klein and Pattillo's agreement, the "Track Agreement," gave Pattillo the right to use the portion of the spur track on Klein's property and gave Klein the right to use the portion of the spur track on the property Pattillo later acquired, "as long as the said track, or any part of it, is maintained." The Track Agreement was subsequently superseded by a July 18, 1928 agreement that concerned realigning the spur track within the lots.

---

[1] In some of the instruments relating to the property, Pattillo's name is spelled "Patillo."

On November 9, 1927, Pattillo conveyed Lots 4 through 7 of Copenhill to Enterprise Development Company ("EDC") pursuant to an indenture[2] and EDC conveyed title in those lots back to Pattillo pursuant to a deed to secure debt, leaving EDC with a right of possession and redemption in the property. See generally *Rhodes v. Anchor Rode Condo. Homeowner's Assn.*, 270 Ga. 139, 139-140 (1) (508 SE2d 648) (1998) (discussing property rights held by grantor and grantee of deed to secure debt); *Turner Advertising Co. v. Garcia*, 252 Ga. 101, 102 (1) (311 SE2d 466) (1984) (same). The spur track ran across the property conveyed to EDC. The indenture by which Pattillo conveyed this property to EDC provided, as to the spur track:

> There is now a spur railroad track across said lots, and the said S. J. Patillo reserves as to said four lots an easement therein for railroad purposes said easement to be used as appurtenant to the property lying across the alley and southeast of the above lots, said Patillo reserving the right to use said railroad track as they now exist should he purchase said adjoining property, and further reserving the right to sell said railroad trackage rights to any future owner of said adjoining property reserving

---

[2] "At common law there existed a distinction between an indenture and a deed under which a deed was considered to be a conveyance made by one person only, whereas two or more persons were parties to an indenture. This common-law distinction is now obsolete." *Milner v. Bivens*, 255 Ga. 49, 50 (1) (335 SE2d 288) (1985) (citation and footnote omitted).

10

such trackage rights to be used in common with the owner of the above described tract and the owner of the said adjoining tract.

The grantee [EDC] reserves and retains a perpetual right to the use of said spur railroad track. This deed is made subject to [the Track Agreement], concerning said spur track, said agreement being recorded in the office of the clerk of the superior court of Fulton County, Georgia.

This indenture also described the alley on the southern border of Lot 4 and referenced the 1915 recorded plat depicting that alley. The deed to secure debt from EDC to Pattillo also referred to the spur track, stating that it was "subject to the restriction and reservation of easement in spur track referred to in [the] deed from S. J. Pattillo to [EDC] dated November 9, 1927." In a separate deed executed that same day, Pattillo also conveyed Lots 8 through 10 of Copenhill to EDC.

Pattillo acquired two adjoining lots (Lots 2 and 3 of Copenhill) on February 15, 1928, and on May 1, 1928, he conveyed those lots to EDC through a warranty deed that stated that Pattillo "also convey[ed] right of way of railroad o[n] adjoining lot." That same day, although EDC had not yet satisfied the debt to Pattillo that had encumbered Lots 4 and 5, EDC conveyed a secured interest in several lots, including Lots 4 and 5 and the other property that now comprises 331 Elizabeth and 905

11

Bernina, to Milton Dargan in an indenture that functioned as a deed to secure debt.[3]

So as of May 1, 1928, Dargan had title to the property that now comprises 331 Elizabeth and 905 Bernina, over which ran the spur track across Lots 4 and 5, and EDC had a right of possession and redemption in that property and a "perpetual right to the use of said spur track" in Lots 4 and 5, by virtue of the November 1927 conveyances of those lots between Pattillo and EDC, that was subject to Dargan's secured interest. Separately, EDC had a "right of way of railroad" in Lots 4 and 5, by virtue of Pattillo's warranty deed conveying Lots 2 and 3 to EDC, that was not subject to Dargan's secured interest.

On October 26, 1928, Dargan conveyed his interest in a portion of the property back to EDC through a quitclaim deed. The portion conveyed back to EDC, 331 Elizabeth, was comprised of parts of Lots 4 and 5 and was adjacent to but did not include the spur track; the quitclaim deed that effected this conveyance contained a metes and bounds legal description that included the land on which the 331 Elizabeth building now stands but not the land on which that building's attached platform

---

[3] It appears that EDC satisfied the debt to Pattillo secured by the November 9, 1927, deed to secure debt a few days after EDC conveyed a security interest in Lots 4 and 5 to Dargan.

stands. (The parties dispute whether the building and platform existed at the time of this October 26, 1928, conveyance. That dispute is addressed in Division 2, infra.)

Although Dargan conveyed his security interest in 331 Elizabeth back to EDC in the quitclaim deed, he retained his security interest in the remaining portion of the property, 905 Bernina, which contained the spur track. So as of October 26, 1928, EDC had title to 331 Elizabeth; a right of possession and redemption in 905 Bernina; a "perpetual right to the use of said spur track" over 905 Bernina by virtue of the November 1927 conveyances between Pattillo and EDC of the property that became 331 Elizabeth and 905 Bernina; and a "right of way by railroad" over 905 Bernina by virtue of the May 1928 conveyance of Lots 2 and 3 from Pattillo to EDC. And Dargan had title to 905 Bernina pursuant to the May 1, 1928 deed to secure debt. At that point, title to 331 Elizabeth and 905 Bernina diverged, and from that point each property has a separate chain of title leading to the present litigants — 331 Elizabeth to Smith/Burns, and 905 Bernina to the Co-op.

(b) *Chain of title for 331 Elizabeth.*

On November 1, 1928, six days after receiving title to 331 Elizabeth from Dargan through the quitclaim deed, EDC conveyed that property, including all of

13

EDC's rights in the spur track, to Emory University in a deed to secure debt. That deed stated that the property was improved with a two-story brick building.

On February 13, 1930, EDC satisfied its security deed to Emory University and, by warranty deed, conveyed to Ballard & Ballard Company both title to 331 Elizabeth and "the perpetual right to use, in common with the owners of other properties abutting thereon, the spur railroad track adjacent to, and northeast of, the property hereby conveyed." The warranty deed stated that two instruments created this right: the 1924 Track Agreement between Klein and Pattillo and the November 1927 conveyance between Pattillo and EDS.

A chain of title exists in 331 Elizabeth from Ballard & Ballard Company, through several other persons or entities, to plaintiffs Gerald Burns and David Smith, who acquired the property in 1986, and then to their limited liability corporation, plaintiff Smith/Burns, which acquired the property in 2009. Like the deed from EDC to Ballard & Ballard Company, the other deeds in this chain also contain the language conveying the perpetual right to use the spur track, except for the 1986 warranty deed conveying the property to Burns and Smith and the 2009 quit claim deed in favor of Smith/Burns.

(c) *Chain of title for 905 Bernina.*

14

On April 27, 1929, Dargan transferred his remaining security interest in 905 Bernina to Fannie Lee Davidson through a quitclaim deed. Subsequently, EDC defaulted and Davidson foreclosed on 905 Bernina and conveyed it to Claude A. McGinnis through a deed under power of sale dated December 3, 1929. A chain of title exists in 905 Bernina from McGinnis, through several other persons or entities, to the defendant Co-op. Defendants Thomas and Janet Berry have an ownership interest in the defendant Co-op and have lived in a residential unit at 905 Bernina since 1995.

(d) *Use of the platform, spur track, and alley.*

The parties became neighbors when defendants Thomas and Janet Berry moved into 905 Bernina in 1995. When the litigation began, plaintiffs Burns and Smith both used the second floor of 331 Elizabeth for their commercial photography studios, and Smith also lived on that floor. The only access to the second floor of 331 Elizabeth was through the spur track and platform at the rear of the property. The plaintiffs used the portion of the alley next to 331 Elizabeth to access the spur track, and they used the spur track to access the second floor of their building. They parked vehicles on the spur track and used it for activities connected with their photography businesses.

In 2001, the defendants began to construct a garden in the portion of the alley next to 905 Bernina. They built permanent structures in that portion of the alley as part of the garden. They also built a retaining wall that blocked vehicular access to that portion of the alley.

In 2011, defendants Thomas and Janet Berry became concerned about the use another neighbor was making of the spur track, which included using circular saws and driving a forklift into the area. They also were bothered by an increase in people using the spur track as a cut-through. In an effort to stop those uses, the defendants built a fence around a portion of the spur track. They placed the fence on part of the platform attached to 331 Elizabeth. The fence blocked vehicular access to the spur track.

2. *Rights in the platform.*

The special master recommended that the trial court enter an order declaring that plaintiff Smith/Burns has fee simple title to the land on which the platform sits, declaring that the defendant Co-op's property line extends out and up to the edge of the platform, and requiring the defendants to remove all structures located on the platform. The trial court adopted this recommendation. We find no error.

16

Our analysis of this issue turns on whether the October 26, 1928, quit claim deed from Dargan to EDC, which conveyed title to 331 Elizabeth, also conveyed title to the platform attached to the 331 Elizabeth building, even though the metes and bounds legal description in that deed did not include the platform. "Under our law, real property includes not only the land but all improvements thereon[, and] unlike items of personalty, the realty and the improvements thereon cannot be separated from each other." *Fulton County Bd. of Assessors v. McKinsey & Co.*, 224 Ga. App. 593, 594 (1) (481 SE2d 580) (1997) (citation and punctuation omitted). See OCGA § 44-1-2 (a) (defining "realty" and "real estate" to include "[a]ll lands and the buildings thereon" and "[a]ll things permanently attached to land or to the buildings thereon"). "Fixtures are also included in this classification, defined as 'anything which is intended to remain permanently in its place even if it is not actually attached to the land.' OCGA § 44-1-6 (a)." *Fulton County Bd. of Assessors*, supra. "Anything intended to remain permanently in its place, though not actually attached to the land . . . , is a part of the realty and passes with it." *Brigham v. Overstreet*, 128 Ga. 447, 449 (57 SE 484) (1907) (citation omitted).

The evidence shows that the platform was installed when the building at 331 Elizabeth was built; among other things, the platform extends approximately one foot

17

inside the building (and therefore one foot inside the land described in the quit claim deed from Dargan to EDC). This indicates that the railroad platform is "attached to and form[s] an integral part of the [331 Elizabeth] building, and [its] removal would do injury to the realty." *Fulton County Bd. of Assessors*, supra at 594 (1) (punctuation omitted). See *Consolidated Warehouse Co. v. Smith*, 55 Ga. App. 216, 219 (189 SE 724) (1937). As such, the platform comprised a part of the 331 Elizabeth real estate and passed with it when Dargan conveyed the real estate to EDC in the quitclaim deed. *Fulton County Bd. of Assessors*, supra; *Brigham*, supra.

Even if Dargan could have reserved his interest in the platform while conveying his interest in the building to which it was attached to EDC, he did not do so. The terms of his quitclaim deed to EDC are unambiguous; that deed conveys Dargan's interest in 331 Elizabeth to EDC with no reservation of any rights in the attached platform. And there is no evidence that Dargan reserved his interest in the platform in any collateral contract. Consequently, "the strict rule of the common law obtains and all fixtures actually or constructively annexed to the realty pass by conveyance of the freehold although it may describe only the land." *Hargrove v. Jenkins*, 192 Ga. App. 83, 84 (383 SE2d 636) (1989) (citations omitted). See also *Power v. Garrison*, 141 Ga. 429, 434 (81 SE 225) (1914); *Wolff v. Sampson*, 123 Ga.

18

400, 402 (51 SE 335) (1905). Under this rule, Dargan's quitclaim deed conveyed title to the platform as part of the realty described in that deed.

We recognize that this case involves unusual facts. The most analogous case we have found is *In re Huckabee Auto Co.*, 58 B. R. 826 (Bankr. M. D. Ga. 1986). In that case, the court considered whether the grantee of a deed to secure debt obtained an interest in ramps that were attached to a parking garage on the property conveyed by that deed but extended into space beyond the property's boundaries. The *Huckabee* court found that, under Georgia law, the deed did convey a security interest in the ramps, reasoning that the garage was permanently affixed to the land described in the deed to secure debt and became a part of that realty, and that the ramps were an integral part of the garage and thus fixtures that also constituted a part of that realty. Id. at 830. We find the reasoning in *Huckabee* persuasive. Applying that reasoning here, the 331 Elizabeth building was permanently affixed to the land described in the quit claim deed and the platform was an integral part of that building; so both the building and the platform constituted part of the 331 Elizabeth realty that Dargan conveyed to EDC in the quitclaim deed.

The defendants argue that the 331 Elizabeth building and platform did not exist on October 26, 1928, when Dargan conveyed his interest in 331 Elizabeth to EDC

through the quitclaim deed. But only six days later, on November 1, 1928, EDC conveyed a security interest in 331 Elizabeth to Emory University in a deed to secure debt that states that the premises were "improved with a two story brick building[.]" That same day EDC conveyed a second security interest in 331 Elizabeth to Pattillo in a deed to secure debt that described the 331 Elizabeth property, stated that there was "a two story building upon said property," and then stated: "There is included in this conveyance the area upon which is located the loading platform adjoining the above described property on the northeast." The defendants correctly note that these subsequent deeds are not evidence of Dargan's intent when he executed the quitclaim deed. But the November 1 deeds referring to the building and/or the platform *are* evidence that the platform attached to the building at 331 Elizabeth existed when, four days earlier, Dargan conveyed his interest in 331 Elizabeth to EDC.

Nevertheless, the defendants argue that there is evidence that the building and platform did not exist when Dargan signed the quit claim deed on October 26, 1928. They point to a plat of EDC's property, dated May 18, 1928, and revised on October 19, 1928, and April 16, 1929, which depicted the 331 Elizabeth building as "under construction" and did not indicate the presence of a platform. This plat does not create a factual question regarding the existence of the platform that precludes

20

summary judgment for the plaintiffs. The November 1, 1928 deeds referring to a building on 331 Elizabeth or a platform adjoining 331 Elizabeth are direct and positive evidence that the building and attached platform existed as of November 1, 1928. Where

> direct and positive [evidence] is presented on an issue, the opposing party [on summary judgment] must show some other fact which contradicts the [evidence]. If this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the [movant's] evidence, or if consistent, it must demand a finding of fact on the issue in favor of the [nonmovant].

*Haley v. Regions Bank*, 277 Ga. 85, 88-89 (1) (586 SE2d 633) (2003) (citations and punctuation omitted). The plat to which the defendants point is not direct evidence as to whether or not the building and platform existed on November 1, 1928, but rather circumstantial evidence. In the face of direct evidence that the building and platform existed on November 1, 1928, the plat does not *demand* a finding that they did not exist. At most, a finding that they did not exist may be inferred from the plat. "In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value

21

against positive and uncontradicted evidence that no such fact exists." *Haley*, supra at 89 (1) (citation and punctuation omitted).

For these reasons, we affirm the grant of partial summary judgment to the plaintiffs on the issues relating to the platform (both declaratory and injunctive relief). Given this disposition, we need not consider the parties' arguments about whether, alternatively, the plaintiffs obtained title to the platform through adverse possession.

3. *Rights in the spur track.*

The special master recommended that the trial court enter an order declaring that "an express, nonexclusive easement in the spur track[ ] . . . exists for the benefit of the 331 Elizabeth Street property and its owners[,]" and requiring the Co-op and the Berrys to remove all structures blocking the easement, including the fences. The trial court adopted this recommendation. We find no error.

An express easement, also known as an easement acquired by grant, *Whipple v. Hatcher*, 283 Ga. 309, 310 (658 SE2d 585) (2008), is an easement "expressly agreed upon by contract between a landowner and another[.]" 1 Pindar's Ga. Real Estate Law & Procedure § 8:17 (6th ed. 2004) (footnote omitted). "In interpreting an express easement, the rules of contract construction apply. The construction of a contract is a question of law for the court. The cardinal rule of construction is to

22

ascertain the parties' intent." *Irvin v. Laxmi, Inc.*, 266 Ga. 204, 205 (1) (467 SE2d 510) (1996) (citations omitted). See also *Pichulik v. Ball*, 270 Ga. App. 656, 660 (1) (607 SE2d 247) (2004).

EDC purported to convey an easement for "the perpetual right to use . . . the spur railroad track" when, on February 13, 1930, it sold 331 Elizabeth to Ballard & Ballard Company, the plaintiffs' predecessor-in-interest. The question is whether EDC had any easement rights to convey at that time. We conclude that it did, as a matter of law, and that those rights ultimately passed to Ballard & Ballard Company's successor-in-interest, Smith/Burns.

EDC obtained an easement in the spur track through its November 9, 1927 transactions with Pattillo. As described above, on that date EDC bought Lots 4 and 5 of the Copenhill property from Pattillo and then conveyed title in those lots back to Pattillo through a deed to secure debt. The language of the instruments in both of those conveyances expressly reserved in EDC an easement in the spur track, stating that EDC had the "perpetual right to the use of said spur railroad track." The defendants assert that EDC did not obtain an easement in this transaction, because it could not have an easement in property that it owned. While it is true that "no man can have an easement in his own land," *Elrod v. Elrod*, 272 Ga. 188, 190 (2) (526

23

SE2d 339) (2000) (citation and punctuation omitted), the result of the November 9, 1927, transaction was that *Pattillo*, not EDC, held title to the property, and EDC merely had a right to possession and redemption. See *Rhodes*, supra, 270 Ga. at 139-140 (1). There was not the "union of an absolute title to and possession of the dominant and servient estates" required to extinguish an easement. *Fulton County v. City of Sandy Springs*, 295 Ga. 16, 18 n. 3 (757 SE2d 123) (2014) (citation and punctuation omitted). Accord *Tew v. Hinkle*, 273 Ga. App. 12 (1) (614 SE2d 160) (2005). EDC's reservation of a perpetual right to use the spur track, as part of its conveyance of title in the property to Pattillo pursuant to a deed to secure debt, created an easement. And while EDC later regained title to the portion of Lots 4 and 5 that constituted 331 Elizabeth, it never regained title to the portion that constituted 905 Bernina, over which the spur track runs.

The defendants argue that any easement that 331 Elizabeth had in the spur track was limited to railroad use, and that the plaintiffs' current use of the spur track exceeds the scope of the easement. We disagree. A review of the instruments involved in the 1927 conveyances between EDC and Pattillo, which created EDC's easement in the spur track, shows that EDC's easement went beyond mere use of the spur track for railroad purposes. In the 1927 conveyances, EDC reserved the "right

24

to use" the spur track, with no qualification as to the type of use. In contrast, in those same conveyances Pattillo reserved a more narrow right to use the spur track "for railroad purposes[.]" Considering these instruments as a whole, see *Hernandez v. Whittemore*, 287 Ga. App. 251, 252-253 (651 SE2d 180) (2007), we construe EDC's easement in the spur track to be broad enough to encompass the plaintiffs' uses. See *Parris Properties, LLC v. Nichols*, 305 Ga. App. 734, 739 (1) (b) (700 SE2d 848) (2010) (the manner of use within the physical boundaries of an existing easement may change); *Lanier v. Burnette*, 245 Ga. App. 566, 569 (2) (538 SE2d 476) (2000) ("The grant of an easement impliedly includes the authority to do those things which are reasonably necessary for the enjoyment of the things granted.").

Finally, the defendants argue that the plaintiffs' predecessor-in-interest, William Erb, abandoned any express easement in the spur track by obtaining a payment from the Department of Transportation to relinquish his rights to access the main railroad line in connection with a potential condemnation and by placing a steel bridge over the spur track, rendering it unusable for railroad purposes. But as discussed above, the express easement granted rights beyond mere railroad use. And Erb's actions did not manifest a clear intent to abandon the use of the spur track for ingress and egress to the back of the 331 Elizabeth property. See *Whipple*, supra, 283

25

Ga. at 310 (law does not favor extinguishment of easements, and easement acquired by grant is not extinguished without clear, unequivocal, and decisive evidence of an intent to abandon it). To the contrary, Erb continued to use the spur track for those purposes. The defendants also argue that Erb's failure to mention the easement in his later conveyance of the property constituted "abandonment as a matter of law," but they offer no citation to authority in support of this assertion.

For these reasons, we affirm the grant of partial summary judgment to the plaintiffs on the issues relating to the spur track (both declaratory and injunctive) relief). Given this disposition, we need not consider the parties' arguments about whether, alternatively, the plaintiffs obtained an easement in the spur track by prescription.

4. *Rights in the alley.*

The special master recommended that the trial court enter an order declaring that plaintiff Smith/Burns does not have an express easement in the alley. Elsewhere in her report, the special master concluded that Smith/Burns has "an ownership right to the [a]lley up to their property line" that extended "to the centerline of the portion of the alley abutting [331 Elizabeth]." See generally *Johnson & Co. v. Arnold*, 91 Ga. 659, 667 (18 SE 370) (1893) ("the bounding of a tract by the edge or margin of a road

26

will pass the fee to the middle line of the road when the vendor owns the fee on both sides"). And the special master concluded that plaintiff Smith/Burns has "any easement rights that have accrued because of [its] and other adjacent owners' use of the [a]lley. However, [plaintiff Smith/Burns] ha[s] no right in the [a]lley insofar as it further extends [to abut 905 Bernina]. Only [d]efendants and unknown adjacent property owner(s) have an interest therein[.]" The trial court adopted the report and its recommendations.

The trial court erred in declaring that plaintiff Smith/Burns has no express easement in the alley. The alley was depicted on the 1915 recorded plat of the Copenhill property and plaintiff Smith/Burns acquired 331 Elizabeth in a chain of title descending from the original developer in instruments that made reference to the recorded plat. See *Goodson v. Ford*, 290 Ga. 662, 665 (3) (725 SE2d 229) (2012); *Smith v. Clay*, 239 Ga. 220, 221 (236 SE2d 346) (1977); *Zywiciel v. Historic Westside Village Partners, LLC*, 313 Ga. App. 397, 399-400 (721 SE2d 617) (2011). This chain of title gave Smith/Burns a complete right to an easement in the entire alley. See *Owens Hardware Co. v. Walters*, 210 Ga. 321 (1) (80 SE2d 285) (1954).

The defendants argue that plaintiff Smith/Burns abandoned its easement in the portion of the alley abutting 905 Bernina. See OCGA § 44-9-6 ("An easement may

27

be lost by abandonment or forfeited by nonuse if the abandonment or nonuse continues for a term sufficient to raise the presumption of release or abandonment."). But because Smith/Burns's easement in the alley arose from a grant, it cannot lose the easement by mere nonuse. See *Smith v. Gwinnett County*, 248 Ga. 882, 884 (2) (a) (286 SE2d 739) (1982). "The law does not favor the extinguishment of easements, and an easement acquired by grant is not extinguished merely by nonuse; there must be clear, unequivocal, and decisive evidence of an intent to abandon the easement." *Whipple*, supra, 283 Ga. at 310 (citations omitted). Accord *Sermons v. Agasarkisian*, 323 Ga. App. 642, 645 (1) (746 SE2d 596) (2013).

> Stated otherwise, where a right of way or other easement is acquired by grant or deed, no duty is thereby cast upon the owner of the dominant estate thus created to make use thereof or enjoy the same as a condition to the right to retain his interest therein, and the mere non-use[ ] of such an easement for a period however long will not amount to an abandonment. The mere fact that one does not immediately begin to exercise his right of use under an easement, or that he delays doing so for a number of years, would not occasion a loss of the easement. His right being complete, he could not be deprived of it except by express abandonment, or by such conduct as would be tantamount to the same.

*Sermons*, supra at 645-646 (1) (citation and punctuation omitted).

We noted in *Sermons v. Agasarkisian*, supra, that "there appears to be some conflict in the Supreme Court of Georgia's authority on whether an express easement may be abandoned by nonuse for a period of 20 years[.]" Id. at 646 (1) & n. 3 (citing authority on both sides of conflict). As in *Sermons*, however, we need not address this issue, because it is undisputed that less than 20 years passed between the defendants' construction of the first obstruction in the alley and plaintiff Smith/Burns's objection to the obstructions. See id. at 646-647 (1); *Smith v. Bentley*, 70 Ga. App. 13, 15-16 (27 SE2d 252) (1943).

So for the defendants to prevail on their claim for partial summary judgment on the issue of plaintiff Smith/Burns's right to an easement in the alley, and to avoid partial summary judgment in the plaintiffs' favor on this issue, the defendants were required to point to evidence that plaintiff Smith/Burns either expressly abandoned its easement in the alley or engaged in conduct, beyond mere nonuse, that was tantamount to an express abandonment. See *Duffy St. S. R. O. v. Mobley*, 266 Ga. 849 (1) (471 SE2d 507) (1996); *Hardigree v. Hardigree*, 244 Ga. 830, 831 (2) (262 SE2d 127) (1979); *Boling v. Golden Arch Realty Corp.*, 242 Ga. 3, 4 (247 SE2d 744) (1978). Cf. *Aggregate Supply Co. v. Sewell*, 217 Ga. 407, 411 (122 SE2d 580) (1961) (treating issue of plaintiff's abandonment of rights in real property as affirmative

29

defense against plaintiff's assertion of such rights). Although intent to abandon an easement often is an issue for the factfinder, see *Duffy St. S. R. O.*, supra, 266 Ga. at 849 (1), the issue can be resolved on summary judgment if there is not clear, unequivocal, and decisive evidence of intent. See *Whipple*, supra, 283 Ga. at 311.

The defendants have pointed to no evidence that plaintiff Smith/Burns expressly abandoned its easement in the alley. They argue, however, that the plaintiffs' actions, as a matter of law, clearly manifested an intent to abandon that portion of the alley, adjacent to the building on Co-op's property, on which the defendants built the garden. In considering this argument, we assume without deciding that it is possible for one to abandon a portion of an express easement in a private alley that arose under the circumstances of this case. But see *Plantation Pipe Line Co. v. Milford*, 257 Ga. App. 709, 712 (2) (b) (572 SE2d 67) (2002) ("The trial court cites no authority for the proposition that an express easement may be partially abandoned. We have found none, but there is ample authority to the contrary.") (citations omitted); 1 Pindar's Ga. Real Estate Law & Procedure § 8:31 n. 1 (6th ed. 2004) ("An express easement may not be partially abandoned.") (citation omitted).

But the defendants primarily point to evidence of mere nonuse. They argue that the evidence shows the plaintiffs were "not concerned about using the [a]lley" when

30

they acquired 331 Elizabeth, that the plaintiffs remain "not concerned with using the [a]lley," and that the portion of the alley at issue "has not been used as an alley" and "physically cannot be used as an alley" in its current condition due to overgrowth and elevation. As discussed above, this evidence of nonuse, without more, is insufficient to show abandonment.

The defendants also point to the plaintiffs' failure to contemporaneously object when, beginning in 2001, the defendants built obstructions in the alley. But so long as the person with the dominant estate objects to the obstructions within the 20-year prescriptive period, his failure to make an earlier objection is not, standing alone, evidence of an intention to abandon the easement. *Smith*, supra, 70 Ga. App. at 15-16. "[W]here one has an easement in an alley, created by grant, he can have obstructions in the alley removed, although he suffers no damage or inconvenience therefrom." Id. at 15 (emphasis omitted).

The defendants also point to the plaintiffs' failure to maintain the contested portion of the alley in a usable condition; and the fact that the plaintiffs sometimes parked vehicles in the alley and allowed others to do the same. This conduct, however, is not tantamount to an express abandonment in the easement; rather, it is tantamount to nonuse. It shows that the plaintiffs were not exercising their rights in

the easement, not that they intended to forever abandon those rights. See *Houston v. Flory*, 329 Ga. App. 882, 889 (2) n. 6 (766 SE2d 227) (2014) (nonuse is the failure to exercise a right). This evidence simply does not clearly, unequivocally, and decisively show that the plaintiffs intended to abandon the easement.

Cases cited by the defendants do not require a different conclusion. In *Duffy St. S. R. O. v. Mobley*, supra, 266 Ga. App. at 849-850 (1), our Supreme Court upheld a jury finding that an easement had been abandoned where there was evidence showing that a predecessor to the party claiming the easement had blocked it with a fence, and that the easement had not been used by anyone with legitimate reasons to use it for more than 20 years. And in *Pleasure Bluff Dock Club v. Poston*, 294 Ga. App. 318, 319-320 (2) (670 SE2d 128) (2008), we found there was evidence of more than nonuse of an easement in a natural boat landing, where the holders of the easement stopped using the landing and began using a common dock instead. Here, by contrast, the defendants point to no evidence that the plaintiffs had blocked the contested portion of the alley (aside from temporarily parking vehicles near the retaining wall built by the defendants) or previously had begun to use another route in lieu of the contested portion of the alley.

5. *Motion to dismiss.*

Plaintiff Smith/Burns argues that the trial court erred in dismissing, for failure to state a claim, the trespass claim that Smith/Burns had asserted in its initial and first amended complaints. But after the trial court made this ruling, Smith/Burns further amended its complaint, again asserting a claim for trespass, and that trespass claim has not been dismissed and remains pending below. Consequently, Smith/Burns' claim of error is moot.

*Judgments affirmed in part, reversed in part, vacated in part, and case remanded. Barnes, P. J., and Mercier, J., concur.*